Our fourth case of the morning is United States v. Sergio Zacahua. Mr. Camarena. Yes, Your Honor. Good morning, Your Honors. May it please the Court. My name is Paul Camarena and I'm counsel for the Appellant, Mr. Zacahua. After the Court appointed me as counsel for Mr. Zacahua, I filed a motion to withdraw and I filed an accompanying Anders brief where I noted that, contrary to Rule 11b1, the District Court failed to advise Mr. Zacahua about the immigration consequences of his plea. Nevertheless, because Mr. Zacahua failed to object at the District Court, I had concluded that his appeal would be frivolous. And in support of my position, I cited several cases that seem to suggest that. I cited a Northern District of Illinois District Court case that was authored by His Honor Judge Holderman. I also cited a Fourth Circuit case and the most recent case I cited in support of that position was an Eleventh Circuit case, Gutierrez v. United States, where the Eleventh Circuit stated that the defendant, quote, could not show prejudice since he was an illegal alien who was subject to deportation even before his guilty plea. The Court denied my motion pursuant to Anders and I'm embarrassed to say it correctly so because I had overlooked some very important precedent. I had written this motion and this brief over several months and just a couple of weeks before I finally filed my Anders motion, the Supreme Court issued an opinion in the case of Jay Lee v.— It is not important to go through the events before we directed you to file a brief on the merits. The task now is to address the merits. Yes, Your Honor. In Lee v. United States, the evidence of guilt according to all the courts that looked at that case was overwhelming. The government had recorded Mr. Lee engaging in a drug transaction. He actually confessed to engaging in a drug transaction. The record states that he expected that had he gone to trial and lost, he would have received a sentence of at least three years and up to five years in prison. Instead, he decided to plead guilty and receive the sentence of only one year and one month. So he received a real benefit by pleading guilty. The problem with that guilty plea is that it was unknowing because Mr. Lee did not know that by pleading guilty he would be subject to deportation. He saw— Well, that's what your brief now says. Yes. The United States says that he did know that he would be subject to removal and cites places in the record where, before he pleaded guilty, he was expressly so notified. Not in the Rule 11 colloquy, but other places. Yes, Your Honor. And I notice you didn't file a reply brief. Yes. Do you agree or disagree with those citations? The citations are correct. The argument is wrong. And the Court will want me to explain that the two statements that the government cites to is the government's statement during the detention hearing, which had nothing to do with deportation. The government opposing counsel, whose goal would have been to keep Mr. Zakahoa detained, is if he were not convicted, he faces the likelihood of removal from the United States to Mexico. And thus, he must surely be questioning why he would stay in the United States. The statement came from opposing counsel, and of course, any litigant would have to take opposing counsel's— But then the judge reiterated it and said he was taking that under consideration, that because he was here illegally, that he would likely be deported, and he took that as evidence of risk of flight. So it wasn't just coming from the opposing side. The Court itself specifically factored that in. Yes, Your Honor. What the Court said was, I give some credence to the government's argument that Mr. Zakahoa really doesn't have any incentive to stick around. I think that's giving some credence to the government's argument is not the same thing as making a finding that—or expressly advising Mr. Zakahoa that he was subject to deportation. But just as importantly, the detention hearing occurred almost three years before the change of plea hearing. And the question should not be whether at some point in Mr. Zakahoa's life he recognized that he could be subject to deportation. Mr. Zakahoa had been in the United States for 20 years without any status. At some point, he must have known that he was subject to deportation. But that's not the question. The question is whether he knew when he decided to waive his right to go to trial. And when considering his right to go to trial, I'll ask the Court to consider what did he have to gain by waiving his right. During the change of plea hearing, the parties put their sentencing position on the record. And the defense stated that had Mr. Zakahoa is conceding that he's liable for at least one kilogram of heroin, which results in an offense level of 30, without acceptance of responsibility, he would have had a high-end guideline range of 100— Has Mr. Zakahoa ever filed an affidavit saying that on the day I pleaded guilty, I did not know that I would be subject to removal? Not an affidavit, no, Your Honor. Can I ask the same, I guess from a slightly different angle? Is your argument a constitutional challenge to the validity of the plea or a Rule 11 challenge? Your Honor, it's a constitutional challenge. That it was not knowing and voluntary? Yes, Your Honor. It was not knowing and voluntary because the record does not establish that he—or really even suggest that he was aware of these dire consequences of deportation. The record of just the plea hearing or of the case as a whole? The case as a whole, Your Honor. Because after the plea, he's telling probation, and then at the sentencing hearing, he's saying,  Certainly after he pled guilty, he became aware that he was subject to deportation because of his guilty plea. And did not ever ask to set that aside, right? Yes, and that's why the court should look at this through a plain error review. That's not a reason to find that plain error doesn't exist. This is the same case as—same situation as in Lee v. United States. Mr. Lee, the petitioner in that case, never sought to—he didn't seek to withdraw his plea until after he had filed a habeas appeal. And the most recent case on point that deals with this is the Sixth Circuit case of United States v. Attaya that dealt with an immigrant from Syria. And in that case, the Sixth Circuit stated that because of the serious consequences on Mr. Attaya and his family, Mr. Attaya was shown that there is a reasonable probability that he would not have pled guilty. And that's actually very similar to the wording that the Supreme Court used in Lee v. United States. But in Attaya, the evidence was different than it was here. At the time of sentencing, Mr. Attaya had spoken very strongly against Syria, where he was going to go back to, explained that there was an ongoing civil war there, and talked to the court about his responsibilities here with three young children, being the breadwinner, which—that type of evidence led the court to conclude that he may not have pled guilty at the time if he had known of the consequences. What evidence do we have here in the record that he—your client—there's a reasonable probability that your client would not have pled guilty if he had known this? Your Honor, when—after I had filed my Anders brief and after the court instructed me to address this issue, Mr. Zocohol filed a pro se—a pro se filing with this court, and in that pro se filing— What contemporaneous evidence is there? Well, Your Honor, it's clear that he didn't raise this issue before the district court, which is why this court's review is only for—for plain error. What about the fact that here, your client is an illegal alien versus in Attaya, the defendant was a naturalized citizen? Well, Your Honor, that fact should actually weigh in favor of Mr. Zocohol, because by the very terms of Rule 11—Rule 11, the warning with respect to immigration consequences only applies when the defendant is not a citizen. Mr. Attaya was a citizen, and so the district court did not violate Rule 11 because he wasn't obligated to tell this citizen about the immigration consequences. Nevertheless, the Sixth Circuit said that it was an annoying plea because he could—he could have been subject to denaturalization. But I would—I don't have that much time left, so I would point out that Lee—in Lee versus the United States, if I may— Thank you, Mr. Cameron. Thank you, Your Honor. Mr. Parente. May it please the Court? The district court did not commit plain error in failing to advise the defendant— Mr. Parente, what year was this plea? 2016, Your Honor. How did this happen? Your Honor, from reviewing the transcript, it looks like what happened here was that it wasn't even for certain that the plea was going to go forward. There was no plea agreement in this case, which there typically is. There was no plea declaration for the defendant, which there typically is. And those are the documents that typically have that immigration notice in it. That's—looking back at the record, that's what I'm assuming happened here. And it was— Were you a trial counsel? I was not, Your Honor. I must say, I share Judge Hamilton's question. You know, I don't understand why every plea is not taken with the bench book's checklist in hand with everybody—the prosecutor, the defense lawyer, the judge—going through the checklist. And then, of course, if the district judge misses one, somebody says, Your Honor, you missed one. Correct, Your Honor. It's like doing an operation, making sure we're operating on the correct leg. Correct, Your Honor. Best practice is obviously for everyone to have that checklist. And it's actually terrifying to think that surgeons make mistakes at the same rate as district judges. Yes, Your Honor. At least no one died in this mistake. Yes, Your Honor. But I think what's important here, Your Honor, is to look at the record evidence of which this court is allowed to do. I know that the detention here was three years prior, but as the Vaughn case says, the appellate court can look at the entire record in trying to determine whether his substantial rights were violated here. And the position of the government is that it was made clear. First of all, the defendant was an illegal alien, and he knew that. He was a self-admitted illegal alien. He was detained for three years pending trial or plea based on that fact. Mr. Parenti, does it matter here that, certainly at the detention hearing and it looks like with the probation officer as well, that the defendant was on notice that he could be deported because he was an illegal alien, not that he could be deported if he pled guilty to this offense? Does that distinction matter? I don't think so, Judge, because, again, I think the Rule 11 warnings, it's not, look, once you plead guilty, you will be deported. It's a general advisement to the defendant that, hey, this could have an effect on your immigration. But that's my point, that the Rule 11 requirement is that you advise the defendant if he pleads guilty to that particular crime, there may be immigration consequences, including deportation. You are relying on statements made at the detention hearing and statements made to the probation officer that the defendant knew he might be deported anyway. But my point is he knew he might be deported because he was an illegal alien. Nobody, from what I can tell, told him he might be deported if he pled guilty to this crime. Does that distinction matter? Well, I think the statement at the detention hearing was now that he's arrested, even if he were not convicted, he faces the likelihood of removal from the United States to Mexico. Correct. Not if you plead guilty, you may be removed to Mexico. Does that distinction for purposes of Rule 11 matter, that he wasn't specifically on notice that he might be deported as a consequence of the conviction for the crime he was charged with? I don't think so, Judge, because the whole point is that he'd suffer no prejudice. His claim here is it was an unknowing plea because if I had known I was going to be deported, I wouldn't have pled. But if he's on notice that he's going to be deported anyway, then there's no prejudice suffered by the defendant to meet that plain error of burden that he has to make. So regardless of how you view how he interpreted the government's argument and the court's detaining him as a risk of flight based on the fact that he is an illegal, he had notice that he's going to be deported. So there's nothing in the record that he can point to that says, had I known this, that this deportation was a risk, I wouldn't have done this. In Ataya and in Gonzalez, that's exactly what you have. Gonzalez is a perfect example. The defendant read the PSR, and in the PSR it said you're likely to be deported. So the first thing he says at sentencing to the judge is, my attorney told me I wasn't going to be deported. I disagree with this. That's what you would expect to happen here. But this defendant, who just 17 days later is interviewed by probation and says, when I'm deported, I'm going to go work at the Hilton in Mexico, fully accepted, never filed a motion to withdraw his plea, and then at sentencing actually embraced it and said, as soon as I'm deported, I want to get out of here as soon as possible. So the first time this was raised was with this appeal. So there's no contemporaneous evidence in the record to support this notion that he did not know. So it's nowhere near the Ataya standard or the Gonzales standard cited by the defendant. So the government's argument, Judge, would be that the defendant has not met the burden here to establish any sort of prejudice suffered or that he would not have entered this plea had he not... had he been advised of this right. If there's no further questions, then we would ask the conviction to be affirmed. Thank you very much, Mr. Parente and Mr. Camarena. We appreciate your willingness to accept the appointment in this case. The case is taken under advisement.